**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**
**CIVIL ACTION NO. 0:04-CV-53-HRW**

| | |
|---|---|
| **APPALACHIAN FUELS, LLC**<br><br>**Plaintiff**<br><br>**v.**<br><br>**LOGAN & KANAWHA COAL COMPANY, INC.**<br>**Defendant** | **LOGAN & KANAWHA'S PRETRIAL MEMORANDUM**<br><br>**(Electronically Filed)** |

## I. INTRODUCTION

This action has been scheduled for a pretrial conference on August 15, 2005.[1] Pursuant to this Court's Scheduling Order, entered November 30, 2004 (Docket No. 10), Defendant and Counter-Plaintiff Logan & Kanawha Coal Company, Inc. ("Logan & Kanawha"), tenders this pretrial memorandum.

## II. STATEMENT OF FACTS

On January 28, 2004, Joseph A. Czul, President of Logan & Kanawha, and Jeffrey Lowe of Appalachian Fuels reached an agreement in a telephone conversation whereby Logan & Kanawha would purchase 220,000 tons of coal. The coal was of a certain specification, commonly known as "steam coal," and 20,000 tons per month were to be delivered to Logan & Kanawha's Snap Creek loadout over 11 months (February 2004-December 2004) at a price of $37 per ton. Because the Snap Creek loadout is right next to Appalachian Fuels' mine, this agreement allowed Appalachian Fuels to sell its coal to Logan & Kanawha without incurring the

[1] The Court has not yet scheduled a trial date.

significant costs associated with transporting the coal to a loadout and paying for the loadout to load and crush the coal.

On the same day, Logan & Kanawha prepared a confirmatory memorandum on its letterhead confirming the terms of the agreed upon transaction. Logan & Kanawha sent the document by facsimile to Appalachian Fuels (the "January 28 Confirmation"). Appalachian Fuels admits in its pleadings that it received this document and telephone records confirm that it was sent. Appalachian Fuels did not object in writing within ten days of receiving the January 28 Confirmation.

Also on January 28, 2004, just after consummating the agreement with Appalachian Fuels, and in reliance upon Appalachian Fuels' statements, Mr. Czul entered into a coal sales agreement with Koch Carbon LLC ("Koch Carbon") for the sale of 60,000 tons of coal. Logan & Kanawha documented this transaction by sending a confirmation to Koch Carbon on January 29, 2004 outlining the terms of the deal.

On February 5, 2004, to document the transaction with Appalachian Fuels further, Logan & Kanawha sent a purchase order on Logan & Kanawha letterhead ("February 5 Purchase Order") to Appalachian Fuels by facsimile. The same terms set forth in the January 28 Confirmation are also set forth in the February 5 Purchase Order. The February 5 Purchase Order was signed when it was sent to Appalachian Fuels. Appalachian Fuels did not object in writing as required by law after it received this second confirmation of the contract.

After Logan & Kanawha sent the February 5 Purchase Order to Appalachian Fuels, Mr. Czul attempted to contact Mr. Lowe, but Mr. Lowe did not return his calls. Mr. Czul eventually did speak with Mr. Lowe and was told by him that the mine was producing "dirty coal" (coal that did not meet specifications) at the time. Mr. Lowe stated that he expected coal to be shipped in

the near future. Mr. Steve Melton, Logan & Kanawha's director of sales, also had a similar conversation with Mr. Lowe. Mr. Melton testified that he came away from the conversation with the impression that Appalachian Fuels would perform on the contract and was about to ship the coal.

When arrangements had not been made for the delivery of coal, Mr. Czul wrote a memorandum on February 18, 2004 to Mr. James H. "Buck" Harless, the Chairman of Logan & Kanawha's parent company. Mr. Czul informed Mr. Harless that he had entered into a contract with Appalachian Fuels on January 28, 2004, and that Appalachian Fuels was avoiding his calls. He also informed Mr. Harless that he had sold a portion of the Appalachian Fuels' order to Koch Carbon in reliance on the deal with Appalachian Fuels. He asked Mr. Harless to intervene with Larry Addington, a person affiliated with Appalachian Fuels, to see if he could help to resolve the matter. This proved unsuccessful.

Therefore, on February 23, 2004, Mr. Czul sent a letter to Appalachian Fuels. In the letter, Mr. Czul stated that he was attempting to schedule the delivery of coal pursuant to the January 28, 2004 agreement between the parties. He demanded that Appalachian Fuels inform Logan & Kanawha whether it intended to perform or repudiate the contract. Mr. Czul also enclosed copies of the January 28 Confirmation and the February 5 Purchase Order. Finally, Mr. Czul informed Appalachian Fuels that, pursuant to the merchant's exception of the Uniform Commercial Code ("U.C.C."), a binding contract existed between the parties. Despite the receipt of a third confirmation of the existence of a contract, and being cited to the merchant's exception of the U.C.C., Appalachian Fuels still did not reject the existence of a contract between the parties as required by law.

Instead of rejecting the contract, Appalachian Fuels contacted Mr. Czul to arrange a meeting to discuss the matter. This meeting occurred on March 10, 2004 (approximately six weeks after the January 28 Confirmation was sent) at Appalachian Fuels' offices. The meeting was attended by John Smith (President of Appalachian Fuels), Jeff Lowe and Joe Czul. It was at this meeting that Appalachian Fuels first communicated to Logan & Kanawha that it did not believe there was a contract between the parties.

The parties could not resolve their dispute, and on April 9, 2004, Appalachian Fuels sent a letter to Logan & Kanawha denying the existence of a contract between the parties. On the same day, Appalachian Fuels filed this lawsuit seeking to avoid its contractual obligations to Logan & Kanawha.

Logan & Kanawha answered Appalachian Fuels' complaint and filed a counterclaim for breach of contract, promissory estoppel and unjust enrichment. (Docket No. 3). In its amended answer to Logan & Kanawha's counterclaim, Appalachian Fuels has asserted a defense of lack of mutuality of obligation (Docket No. 11).

There is no dispute that Appalachian Fuels did not deliver any coal to Logan & Kanawha. As a result, Logan & Kanawha has suffered substantial monetary damages. These damages are calculated pursuant to K.R.S. 355.2-711. To the extent that Logan & Kanawha purchased coal from third parties that meets the definition of "cover" set forth in K.R.S. 355.2-712, Logan & Kanawha would be entitled to damages based upon the difference between the purchase price and the contract price. For the remaining tons of undelivered coal that were not covered, Logan & Kanawha is entitled to the difference between the market price and the contract price on the date of repudiation. The date of repudiation in this case is March 10, 2004, the date that Appalachian Fuels first communicated to Logan & Kanawha its position that there was no

contract between the parties. As set forth in the expert report of Seth Schwartz, Logan & Kanawha's expert, the damages suffered by Logan & Kanawha are between $4,123,862 and $4,461,600. The variance in the damages figure depends upon which, if any, purchases of coal made by Logan & Kanawha from third parties after January 28, 2004 constitute cover transactions.

## III. QUESTIONS OF LAW AND FACT WITH RESPECT TO THE CLAIMS

Logan & Kanawha has asserted three claims in this case. In Count I of its counterclaim Logan & Kanawha has asserted a claim for breach of contract. In Count II Logan & Kanawha has asserted a claim for promissory estoppel. In Count III Logan & Kanawha has asserted a claim for unjust enrichment. The questions of law and fact with respect to these claims are set forth below.

**Count I – Breach of Contract: Questions of Law**

1. Whether the writings sent by Logan & Kanawha to Appalachian Fuels, individually or collectively, satisfy the merchant's exception to the statute of frauds. *Tel-Treads and Tire Engineers of Indiana v. Montgomery Ward & Co., Inc.,* 711 F.2d 1059, *5 (6th Cir. 1983) ("[I]t is a question of law as to whether the memorandum was in confirmation of a prior oral agreement and was sufficient against the sender."). As set forth in the documents filed by Logan & Kanawha regarding summary judgment, Logan & Kanawha believes that the three writings it sent to Appalachian Fuels satisfy the statute of frauds. *See Shpilberg v. Merrill Lynch, Fenner & Smith, Inc.,* 535 S.W.2d 227, 229-30 (Ky. 1976); *Home Lumber Company v. Appalachian Regional Hospitals, Inc.,* 722 S.W.2d 912, 914 (Ky. App. 1987); *Lonnie Hayes & Sons Staves, Inc. v. Bourbon Cooperage Company,* 777 S.W.2d 940, 942 (Ky. App. 1989) (holding that "[i]t does not matter that in this case two writings provide the evidence of a

contract. Separate writings may form the memorandum of contract required by the Statute of Frauds").

2. If the Court determines that the statute of frauds is satisfied, another question of law will be whether the writings provide conclusive evidence of the existence of a contract. *See Shpilberg v. Merrill Lynch, Fenner & Smith, Inc.,* 535 S.W.2d 227, 229-30 (Ky. 1976). In *Shpilberg,* the Kentucky Supreme Court held that a confirmatory writing that satisfies the statute of frauds is conclusive evidence of the existence of a contract.

3. The measure of damages under the Uniform Commercial Code. *See* K.R.S. 355.2-711; K.R.S. 355.2-712; K.R.S. 355.2-713. Logan & Kanawha contends that plain language of K.R.S. 355.2-712 provides that only coal purchased on the open market as a result of Appalachian Fuels' breach constitutes "cover." Appalachian Fuels contends that any inventory of Logan & Kanawha that could have been used to make up for Appalachian Fuels non-delivery constitutes "self-cover" and must be valued at the cost to acquire or produce the coal. Appalachian Fuels makes this argument despite the obvious fact that the coal has a readily identifiable market value on any given day and a market exists into which Logan & Kanawha could have sold the coal. In essence, Appalachian Fuels claims it is entitled to a windfall benefit due to its breach, while Logan & Kanawha must be forced to take a loss. The Uniform Commercial Code does not permit such as result. Even if it is determined that inventory of Logan & Kanawha may be considered "cover" then, pursuant to K.R.S. 355.2-713, such coal must be valued at its market price on the date of repudiation. This is especially true in a case like this one, where the goods at issue are a fungible commodity for which there is a recognized market and an identifiable market price on any given day. *See Chronister Oil Co. v. Unocal Refining & Marketing*, 34 F.3d 462, 465 (7th Cir. 1994) (court held that in order to be "cover"

under 2-712, a party must make a purchase in the open market, that inventory did not constitute cover, and also stated that "[i]f a reasonable response for the buyer to the breach would be to make the product itself, then the difference between the market price of that product and the contract price would be an appropriate measure of the harm from the breach"); *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 596 (S.D.N.Y. 2004) (same).

**Count I – Breach of Contract: Questions of Fact**

1. If the Court does not find a contract as a matter of law, then a principal question of fact will be whether Logan & Kanawha and Appalachian Fuels entered into a contact and the nature of that contract.

2. Whether Appalachian Fuels breached the contract with Logan & Kanawha. However, there is no dispute that Appalachian Fuels failed to deliver coal.

3. The purchases of coal by Logan & Kanawha from third parties that qualify as cover purchases.

4. The amount of damages arising from Logan & Kanawha's cover purchases pursuant to K.R.S. 355.2-712.

5. Whether the February 23, 2004, letter from Logan & Kanawha to Appalachian Fuels constitutes a demand for adequate assurances pursuant to K.R.S. 355.2-609.

6. Whether Logan & Kanawha had reasonable grounds for insecurity as to performance by Appalachian Fuels pursuant to K.R.S. 355.2-609.

7. Whether Appalachian Fuels failed to provide adequate assurance of due performance in response to Logan & Kanawha's demand pursuant to K.R.S. 355.2-609.

8. The date that Appalachian Fuels repudiated the contract with Logan & Kanawha.

9. The market price of coal on the date of repudiation.

10. The amount of uncovered tons of coal to multiply by the market price on the date of repudiation.

11. The damages suffered by Logan & Kanawha pursuant to K.R.S. 355.2-713.

**Count II – Promissory Estoppel: Questions of Law**

12. Logan & Kanawha does not believe there are any questions of law on this issue.

**Count II – Promissory Estoppel: Questions of Fact**

13. Whether Logan & Kanawha detrimentally relied upon a promise made by Appalachian Fuels, which Appalachian Fuels should have reasonably expected to induce action or forbearance by Logan & Kanawha, in entering into a contract for the sale of coal with Koch Carbon LLC on January 28, 2004.

14. The amount of damages suffered by Logan & Kanawha as a result of its detrimental reliance.

**Count III – Unjust Enrichment: Questions of Law**

15. Logan & Kanawha does not believe that there are any questions of law on this issue.

**Count III – Unjust Enrichment: Questions of Fact**

16. Whether (1) a benefit was conferred upon Appalachian Fuels at Logan & Kanawha's expense, (2) there was a resulting appreciation of the benefit by the Appalachian Fuels and (3) it would be inequitable for Appalachian Fuels to retain that benefit.

17. The amount of damages to be awarded to Logan & Kanawha as a result of Appalachian Fuels' inequitable conduct.

## IV. EXPECTED EVIDENTIARY OBJECTIONS

1. Logan & Kanawha objects to Appalachian Fuels offering evidence in support of its theory that damages may be based upon "self-cover." As stated above, the law is clear that even if it was determined that Logan & Kanawha used its own coal to make up for Appalachian Fuels' non-delivery, then Logan & Kanawha's damages would be based upon the market value of that coal on the date of repudiation pursuant to K.R.S. 355.2-713. Accordingly, evidence regarding the issue of "self-cover" is irrelevant to the damages analysis and is not admissible. The evidence that is relevant to the damages analysis is Logan & Kanawha's cost to purchase cover coal from third parties or the market price of coal on the date of repudiation. *See Chronister Oil Co.*, 34 F.3d at 465; *Medinol Ltd.*, 346 F. Supp. 2d at 596. This objection applies to, without limitation, evidence in the form of testimony by Mr. Heller on the subject, the introduction of documents regarding Logan & Kanawha's coal inventory, documents reflecting the cost to mine coal and forecasting data.

2. Logan & Kanawha also objects to Appalachian Fuels offering evidence regarding its assertion that had Appalachian Fuels delivered 20,000 tons of coal per month to Logan & Kanawha, that Logan & Kanawha would not have been able to ship the coal on the CSX railroad. This fact is not relevant to determining damages under K.R.S. 355.2-713. Moreover, at best the evidence is wildly speculative, and it would not aid the trier of fact regarding any facts in dispute in this case. Mr. Heller's testimony on the subject is as follows:

> Q: Is it your opinion that if Logan & Kanawha had had an additional 20,000 tons a month of coal from February to December 2004, that it could not have shipped that coal?
>
> A: I don't know. My opinion is I don't know.

Deposition of James N. Heller p. 108.[2]

[2] A copy of the cited testimony from Mr. Heller's deposition is attached.

*See* Rule 702 Federal Rules of Evidence.

3. If the Court finds as a matter of law that the writings in this case satisfy the statute of frauds, then Logan & Kanawha would object to the introduction into evidence of any documents reflecting coal sale agreements by Logan & Kanawha other than the agreement that is at issue in this action. Such evidence would not be relevant to any matters at issue.

4. Logan & Kanawha objects to Appalachian Fuels entering into evidence documents received from third parties that have not been disclosed to Logan & Kanawha.

**V. PENDING MOTIONS**

1. Currently pending is the motion of Logan & Kanawha for partial summary judgment on the issue of liability with respect to Count I of its counterclaim (Docket No. 47).

2. Also pending is Appalachian Fuels' motion for summary judgment. (Docket No. 39).

3. Finally, Appalachian Fuels has filed a motion to compel discovery (Docket No. 44), which Logan & Kanawha has opposed.

Respectfully Submitted,

/s/ Adam T. Goebel______________

Samuel D. Hinkle IV
R. Eberley Davis
Adam T. Goebel
Stoll, Keenon & Park, LLP
2650 AEGON Center
400 West Market Street
Louisville, Kentucky 40202-3377
(502) 568-9100

and

Howard M. Persinger III
Brumfield and Watson
405 Capitol Street
Suite 613
Charleston, WV 25301-1708

Attorneys for Logan & Kanawha

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2005, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

I further certify that I mailed the foregoing document and notice of electronic filing by United States mail, first class postage prepaid, addressed for delivery to the following non-CM/ECF participants:

Paul A. Sullivan, Esq.
Barry D. Hunter, Esq.
Frost Brown Todd LLC
2700 Lexington Financial Center
250 W. Main Street
Lexington, Kentucky 40507

Counsel for Appalachian Fuels

/s/ Adam T. Goebel______________
Adam T. Goebel

X:\Litigation\Logan & Kanawha - 105819\Dec Relief - 118091\ASF\Pretrial memo.doc