UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

Civil Action No. 04-53-HRW

APPALACHIAN FUELS, LLC,                        PLAINTIFF,

v.            **MEMORANDUM OPINION AND ORDER**

LOGAN & KANAWHA COAL COMPANY,          DEFENDANT.

This matter is before the Court upon Plaintiff's Motion for Summary Judgment [Docket No. 39] and Defendant's Motion for Partial Summary Judgment on the Issue of Liability with Respect to its Breach of Contract Claim [Docket No. 47]. The motions have been fully briefed by the parties and this matter stands ripe for decision. For the reasons that follow, the Court finds that the Plaintiff is entitled to judgment as a matter of law.

This case arises from a an alleged contract to purchase coal. In January 2004, Jeff Lowe, the Quality Control Manager at Appalachian Fuels (hereinafter "Appalachian") and Joe Czul, the President of Logan & Kanawha Coal Company, Inc. (hereinafter "L&K") communicated via telephone regarding the sale of coal. In late January, L&K proposed to buy 220,000 tons of CSX-spec coal from Appalachian at $37.00 per ton, or $7.00 per ton below the then prevailing market price. Thereafter, on February 5, 2004, L&K faxed a Purchase Order to Mr. Lowe

(Exhibit E to Plaintiff's Motion for Summary Judgment). Then, on February 23, 2004, L&K sent a demand latter to Appalachian, referring to the alleged contract and stating its expectation that Appalachian would perform according to its terms (Exhibit F to Plaintiff's Motion for Summary Judgment).

Subsequently, on April 9, 2004, Plaintiff initiated this action by filing a Complaint seeking a declaration that no contract exists between the parties [Docket No. 1]. Defendant filed a Counterclaim, alleging that a contract did, indeed exist and that Plaintiff breached the same and, further, seeking monetary damages resulting therefrom [Docket No. 3].

Rule 56 of the Federal Rules of Civil Procedure requires that the Court view the evidence in the light most favorable to the nonmoving party. Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the nonmoving party in an effort to determine if any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for

the plaintiff." *Anderson,* 477 U.S. at 252. In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). As that Court stated, "the movant could challenge the opposing party to 'put up or shut up' on a critical issue...[and] if the respondent did not 'put up', summary judgment [is] proper." *Id.* at 1478.

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to the parties case and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact" as a complete failure of proof concerning an essential element of the non-moving parties case "renders all other facts immaterial." *Bauer v. Montgomery,* 215 F.3d 656 (6th Cir. 2000), *citing Celotex, supra.*

The crux of this matter is simple. Did a valid, enforceable contract exist between the parties? Generally, a contract for the sale of goods over $500 is not

3

enforceable unless it is in writing and signed by the party against whom enforcement is sought. KRS 355.2-201. It is undisputed that no written contract was ever executed between the parties. However, L&K relies upon the "merchant's exception" to the statute of frauds in support of its argument that a valid contract was in force.

In order to satisfy the merchant's exception to the statute of frauds, it must be shown, first, that an oral agreement was reached by the parties and, second, that the writings exchanged were "confirmations" as defined by KRS 355.2-201(2). Even assuming that an oral agreement was reached, which Plaintiff strenuously refutes, the writings at issue are not "confirmations" as contemplated by statute. In order to constitute a "writing in confirmation of the contract" under KRS 355.2-201(2), the writing in question must be both sufficient against the sender and not require any further action on the part of the recipient. In order to be sufficient against the sender, the confirmatory document must state the quantity, sufficiently indicate that a contract was made and must be signed by the seller. Finally, even if the writings pass muster as confirmations, a party may avoid obligation by giving written notice of its objection to the contents of the writing within ten (10) days after it is received. KRS 355.2-201(2).

4

Defendant maintains that the writings exchanged between the parties, to-wit: the January 28, 2004 "Transaction Details", the February 5, 2004 Purchase Order and the February 23, 2004 demand letter, whether considered separately or collectively, are "confirmations", as defined by the code. However, this shot gun approach fails as the writings fall short of the statutory standard.

The February 5, 2004 Purchase Order is not sufficient against the sender. It states the quantity of coal at issue, but does not sufficiently indicate that a contract was made between the parties. Although it bears the notation "ALL TERMS & CONDITIONS ON THE FOLLOWING PAGE ARE INTO AND MADE PART OF THIS CONTRACT," it also bears the disclaimer "NO PAYMENT WILL BE MADE WITHOUT A RETURNED, SIGNED ACKNOWLEDGMENT OF THIS PURCHASE ORDER". These statements are not only contradictory but defeat the notion of a meeting of the minds. Finally, the Purchase Order is not signed by L&K.

Moreover, the Purchase Order requires additional, affirmative action on the part of Appalachian. In two separate places on the document, Appalachian is directed to sign the document and return a copy of the same to L&K. It is axiomatic that requiring further action on the part of the recipient negates the notion of confirmation as it makes the alleged contract *conditional* upon the an

5

acceptance of the terms set forth in the document as evidenced by the recipient's signature. Indeed, by calling for Appalachian's acceptance in the form of its signature, the Purchase Order appears to be, at best, an *offer*, to buy coal at a stated price. An offer which was not confirmed or accepted in any way by Plaintiff.

L&K's argues that its request for Appalachian's signature was merely a formality. However, in his deposition, Steve Melton of L&K's admitted that shortly after sending the Purchase Order, he phoned Mr. Lowe at Appalachian to inquire as to when L&K could expect to receive Appalachian's signed copy of it (Deposition Of Steve Melton, , March 21, 2005, pg. 79-80). Then, in the February 23, 2005 demand letter, Mr. Czul wrote, "[w]e have tried to reach you repeatedly by telephone over the past two weeks or so to arrange for execution of our purchase order . . . ." Clearly, L&K was eager for Appalachian's signature. L&K's conduct belies its assertion that Appalachian's signature was a mere formality. To the contrary, it lends credence to Appalachian's belief that the contract was conditioned upon its signature.

As for the January 28, 2004 document entitled "Transaction Details" (Plaintiff's Motion for Summary Judgment, Exhibit C), allegedly faxed[1] by L&K

---

[1] In his deposition, Mr. Lowe testified that he has no memory of receiving such a fax on January 28, 2004 (Deposition of Jeff Lowe at p. 55, Exhibit B to Plaintiff's Motion for Summary Judgment). However, given that it is not a writing in confirmation of a contract, the Court will

6

to Appalachian following a phone conversation between Mr. Lowe and Mr. Czul, it too fails as a confirmation. Like the Purchase Order, it states the quantity but is devoid of any indication that a contract had been made between the parties, as well as being unsigned by L&K. Oddly, on the top-center of the January 28 document, the name "Snap Creek Mining, Inc." appears in bold type. The Court is unaware of the relationship of that entity to L&K. Yet, its name appears, seemingly for no reason, prominently, at the top of the January 28 document. This only serves to cast additional doubt as to the document's legitimacy and status.

The Court is perplexed by Defendant's reliance on this particular document as a "writing in confirmation of the contract." If L&K truly regarded the January 28, 2004 "Transaction Details" as a confirmation of the deal struck between it and Appalachian, then, pursuant to the law, it would expect Appalachian's written objection within ten days, which would be February 7, 2004. Yet, notably, on February 5, 2004, two days prior to the deadline for Plaintiff's written objection, L&K issued its Purchase Order which, by its very terms, conditions acceptance of the deal upon Plaintiff's signature. It seems as though Defendant is trying to have it both ways. However, again, L&K's conduct undercuts its arguments.

---

not address this factual issue.

7

Defendant also contends that the February 23, 2004 demand letter satisfies the writing requirement. Again, Defendant's argument falls short as the demand letter provides no basis for the application of the merchant's exception. The letter, by its own terms, does not purport to confirm a contract. It does not refer to the terms and conditions of the putative contract in any way. Rather, the letter simply states L&K's belief that the previous writings triggered Appalachian's duty to respond pursuant to KRS 355.2-201(2)[2].

Finally, multiple writings may be considered together to determine if the statute of frauds is satisfied. *See, e.g. Lonnie Hayes & Sons Staves Inc. v. Bourbon Cooperage Company*, 777 S.W.2d 940, 942 (Ky. App. 1989). Yet in this case, considering the Purchase Order and the Transaction Details documents together does nothing to bolster their status as confirmations.

The question remains as to why Plaintiff did not contact Defendant immediately upon receipt of the Purchase Order and communicate its rejection of the putative terms contained therein? The record is, unfortunately unclear in this regard. The Court suspects that Plaintiff was hoping for a better deal, perhaps shopping around for the same. However, notwithstanding Plaintiff's business

---

[2] In its letter, L&K refers to W.Va.Code § 46-2-201(2), West Virginia's codification of the UCC.

practices, the law in this case is clear - Plaintiff was not bound by the terms set forth in the Purchase Order nor by the January 28 "Transaction Details." As such, the Court finds that Plaintiff is entitled to Judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 39] be **SUSTAINED** and Defendant's Motion for Partial Summary Judgment on the Issue of Liability with Respect to its Breach of Contract Claim [Docket No. 47] be **OVERRULED**. A judgment in favor of the Plaintiff will be entered contemporaneously herewith.

This 22 day of November, 2005.

_____
Henry R. Wilhoit, Jr., Senior Judge